MICHAEL FLYNN, Plaintiff in Error, v. JOHN HERYE ET AL.,
Defendants in Error.

July 9, 1877.

1. H. purchased of the executor, who sold under a power in the will, forty feet.
of ground in the middle of a block belonging to seven heirs. The deed
was not delivered until after H. had erected improvements covering the
entire forty feet, of which he was put in possession. By mistake, the deed
placed the lot purchased six feet south of the possession of H. F. subse-
quently bought of some of the heirs an undivided three-sevenths interest
in the property remaining unsold; and, in partition, the lots bounding
north and south the lot sold to H. were assigned to F. Before final decree
F. discovered that the block contained 306 feet front, instead of 300,
as supposed, it being this mistake in quantity which caused the erro-
neous description in the deed to H. F. caused the mistake in quantity
to be corrected in the partition suit by adding six feet to his lot bounding
H. on the north. F. then commenced ejectment for the six feet occupied
by H. on the south, and for which he had no deed. The court sustained
the equitable defence set up by H., and decreed that, in conveying to F.
the six feet on the north included in his deed, the deed should be reformed
in accordance with the provision. Held, that F. could not recover in
ejectment; that H. had an equity for the reform of his deed, but that the
decree requiring a conveyance by H. was erroneous, and that a decree
reforming the deed in accordance with the possession should be made, after
the heirs, whose interests had not been acquired by deed, had been made
parties to the suit.

2. One who purchases the right, title, and interest of copartners in land before
partition, takes an inchoate title only to the particular lot which he after-
wards acquires by partition, and takes subject to equities existing at the
time between the heirs whose interest he has purchased and third parties.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

J. H. WIETING, for plaintiff in error, cited: *Youngblood*
v. *Vastine*, 46 Mo. 239; *Callaway* v. *Vast*, 50 Mo. 420;
Story's Eq. Jur., secs. 165, 176; Kerr on Fraud, 436;
*Rhodes* v. *Outcault*, 48 Mo. 367; Bispham's Eq., sec. 191.

B. W. PRESCOTT and H. E. MILLS, for defendants in
error: Deeds, mistake in, and correction. — *Leitensdorfer*
v. *Delphy*, 15 Mo. 160; *Hunt* v. *Rousmainer*, 1 Pet. 13;
*Morgan* v. *Rouse*, 53 Mo. 219; *Rhodes* v. *Outcault*, 48 Mo.

367; *Young* v. *Coleman*, 43 Mo. 179. Notice. — Kerr on Fraud, 419; *Schwickerath* v. *Cooksey*, 53 Mo. 75; Story's Eq. Jur., sec. 165; 12 Serg. & R. 389; *Stoffel* v. *Schroeder*, 62 Mo. 147; *Mann* v. *Best*, 62 Mo. 473; *Major* v. *Burkly*, 51 Mo. 227; *Shumate* v. *Reavis*, 49 Mo. 333; Bispham's Eq., sec. 268; 2 Ld. Cas. in Eq. 127; *Livermore* v. *Blood*, 40 Mo. 48; *Haywood* v. *Insurance Co.*, 52 Mo. 81; 11 Wall. 365. There may be an equitable defence to an action of ejectment. — *Hayden* v. *Stewart*, 27 Mo. 286; *Tibeaw* v. *Tibeaw*, 19 Mo. 78; *Maguire* v. *Vice*, 20 Mo. 429; *Sutton* v. *Mason*, 38 Mo. 120; *Canman* v. *Johnson*, 20 Mo. 104; Moak's Van Sant. Pl. 587; *Cythe* v. *LaFontaine*, 51 Barb. 186. May ask for a correction of deed in defence. *Sutton* v. *Mason*, 38 Mo. 120; *Cravy* v. *Goodman*, 12 N. Y. 266; *Phillips* v. *Graham*, 17 N. Y. 271; *Dobson* v. *Pierce*, 12 N. Y. 156.

BAKEWELL, J., delivered the opinion of the court.

This is an action of ejectment for six feet four inches of ground in block 25 of Eiler's survey of Carondelet, brought against defendant Herye. The defendant Herye sets up an equitable defence. It appears from the pleadings, evidence, and stipulation of record that one Motier died, leaving seven children, and owning the greater part of block 25 in Carondelet, which block was supposed to front 300 feet on Main Street, but was discovered, in the course of the transactions which will be related, to contain a frontage of $306\frac{4}{12}$ feet. Motier directed his executor, the defendant Dorman, to sell so much of this land, less than fifty feet, as should be expedient, to pay debts. Accordingly, on May 2, 1870, Dorman, as executor of Motier, sold forty feet fronting on Main Street to defendant Herye. These forty feet were nearly in the middle of the block, beginning 125 feet south of Main Street, and running thence south forty feet, which were marked out to him by Dorman by lines on the curb-

stone, and at once proceeded to erect there a brick building occupying the whole front of forty feet. A few months afterwards, and when this building was half completed, Herye received and recorded his deed from Dorman. In making the description in this deed, as the block was supposed to front 300 feet, the conveyance described the lot as beginning at a point 135 feet north of Vine Street, and running thence north forty feet. As the block in fact contained $306\frac{4}{12}$ feet, this description brought the lot conveyed six feet four inches south of the actual occupation of Herye; and it is these six feet four inches of Herye's occupation which lie south of the description in his deed which are in controversy in this suit.

In 1873 the plaintiff, Flynn, who resided in Washington County, bought of three of the heirs of Motier their interest, as heirs of their deceased father, in the property in block 25, being an undivided three-sevenths; and, on motion, was substituted as party defendant in partition proceedings then pending amongst the Motier heirs. During that year Mr. Flynn was twice in Carondelet, examined and made enquiries about the property, saw Herye's house, and learned from him that he had purchased of the executor. By the commissioners in partition Flynn was assigned the lots immediately adjoining the Herye purchase on the north and south, being Nos. 17 and 19 on the plat. Flynn, or his attorney, discovered the error in the measurement of the block before final decree in partition; and, on motion of Flynn, the report of commissioners was amended so as to make lot 17, assigned to Flynn, thirty-one feet four inches, instead of twenty-five feet, as it was originally reported. These measurements and changes are made intelligible by the following plat, [see p. 363] which was used in the argument of the cause.

The lot bounded by the light lines is the lot actually occupied by Herye. The forty-foot lot bounded by the black lines

is the lot according to the description in Herye's deed.
The numbers of the lots are the numbers of the commis-
sioners' report in partition of the Motier estate.

The final decree in partition was made in May, 1874; and
Flynn swears that he then learned for the first time that
Herye's house was on his ground, and before that he did
not know exactly where any one's lines ran. Herye knew
nothing of the mistake until informed of it, at a date sub-
sequent to this, by Flynn.

On these facts the Circuit Court made a decree that,
"on condition that John Herye shall tender, within ten

days, to plaintiff a deed with special warranty for six feet and four inches off the southern portion of the land described in his deed from Dorman, and pay all the costs of suit, the court finds for defendant Herye, as follows: that defendant has shown his equitable right to a reformation of his deed from Dorman, as against plaintiff;" and it is therefore decreed that, upon the performance by Herye of the condition recited, his deed be reformed, and the description of property therein contained be rectified so as to read as in the amended description contained in the answer, and to include the six feet four inches of the northern part of lot 17, which is the ground sought to be recovered in ejectment.

It will be remarked that, according to Herye's possestion, Flynn has two lots of 25 feet and $33\frac{4}{12}$ feet respectively, and according to the deeds he has two lots of 27 feet and $31\frac{4}{12}$ feet respectively. The total number of feet, of course, remains the same in any case; the lots are unimproved, and it does not appear that their relative value per foot will be changed by either measurement.

This is a clear case of mistake, and of a mistake made by the representative of the Motier heirs. The partition should have been made according to the possession of Herye, and not according to his erroneous deed; and all this might very well have been remedied at the time of the partition, had the mistake been then known. The mere visit of Flynn to the location would not be notice to him that the house of Herye was six feet north of the line of his deed; for the eye could not detect so slight a misplacement in a line of 300 feet; but it would seem that he had discovered the error when he made application to have the dimensions of lot 17 enlarged, in the partition suit. But whether Flynn had notice of the mistake or not, we think that he is estopped to say that Herye is not in under his deed from the executor, — estopped because those from whom Flynn claims are estopped, and he bought subject

to all equities between them and Herye. Flynn purchased from the heirs of Motier an inchoate title to the lots 17 and 19, bounding Herye on the north and south. He did not purchase those particular lots, or any particular lots or parcels of land, but his purchase was three-sevenths of a tract, from coparceners, subject to partition; he thereby became a tenant in common with the remaining coparceners, and before partition he was not the grantee of any particular lot, but tenant in common with the other heirs of the entire tract. He gets title to the particular land assigned to him in partition only by conveying his three-sevenths in the remainder of the tract, and receiving in exchange from the Motiers their four-sevenths in the land which he takes. But four-sevenths of the lot which they had sold to Herye, of which they put him in possession, for which he paid full value, and on which he had erected valuable improvements, did not, in equity, belong to the Motier heirs at the time the partition was made, and they could give no title to it which a court of equity, in this proceeding, will regard. They were bound to respect the possession of Herye, and to treat the description in the deed of their father's executor, selling under a power in their father's will, as the description of the lot intended by all the parties to be conveyed, and of which Herye was put into possession, in effect, by them. Flynn stands in the place of the Motier heirs, whose right, title, and interest he bought; his deed does not give him the rights of a *bonâ fide* purchaser without notice. The reason is that when he paid his money he was the purchaser of an inchoate title to the land for which he now brings ejectment, and there is no rule in equity better settled than that such a purchaser must stand or fall by the case of the persons from whom he purchased. *Whitfield* v. *Fausset*, 1 Ves. 391, is the leading case on this subject, and has always been followed. "When we hear," says Chief Justice Gibson, in *Chew* v. *Barnet*, 11 Serg. & R. 392, "of a purchaser for

a valuable consideration taking the title free of every trust, or equity of which he had not notice, it is intended that he is the purchaser of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imper-fections on its head.    It is his own fault that he confides in a title which appears defective in his own eyes, and he does so at his own peril.''    Now, every title to the share of a coparcener in his father's lands is incomplete on its face; it is a title to go into partition to obtain the legal title to a specific tract; and every purchaser, under such circum-stances, takes subject to every disposition of any specific portion of the tract which has been already made in such a manner as to be binding upon the heirs, and does not, like the purchaser for value of a legal title to a specific tract, take it discharged of every trust or equity which does not appear on the face of the conveyance, and of which he had not notice, either actual or constructive.

A deed which purports to pass '' all the right, title, and interest '' of the alienor does not show that the grantor assumed to pass, or the grantee to receive, a title other or better than that of the alienor; and the purchaser of all the right, title, and interest of an heir in the undivided real estate of his father is bound by equities existing in favor of third parties in possession, at the time of the purchase, by the act of the legal representative of the heirs.    That the defence set up in this case would be good against the Motiers cannot be disputed.    We think that it ought to be allowed against the purchaser from the heirs before parti-tion of an undivided interest in the land of which the lot in question forms a part.

The decree entered by the Circuit Court in this case can-not, however, be sustained.    If Herye's deed is to be reformed according to the prayer of the answer, a convey-ance from Herye to Flynn, as provided in the decree, would not be worth much.    That a decree may be entered which shall bind all parties interested, and effectually settle the

rights of plaintiff and defendant in this lot, such of the Motier heirs as are not parties to the conveyance to plaintiff should be brought in, and the proper decree can then be made.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.